UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATRINA H.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:22-CV-00951 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Katrina H. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 13), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, Plaintiff's motion (Dkt. 9) is denied and the Commissioner's motion (Dkt. 13) is granted.

## BACKGROUND

Plaintiff protectively filed her application for SSI on November 10, 2016, according to the ALJ's decision.[1]  (Dkt. 5 at 20).[2]  In her application, Plaintiff alleged disability beginning January 1, 2016.  (*Id.* at 20, 303).  Plaintiff's application was initially denied on February 8, 2017.  (*Id.* at 156-59).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") William Weir on March 15, 2019.  (*Id.* at 87-106, 134).  On June 17, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 131-44).  Plaintiff requested Appeals Council review, and on August 4, 2020, the Appeals Council entered an order vacating the ALJ's decision and remanding the case for further proceedings.  (*Id.* at 149-53).

An additional hearing was held before ALJ Weir on April 30, 2021.  (*Id.* at 19, 41-86).  On June 22, 2021, the ALJ issued an unfavorable decision.  (*Id.* at 16-40).  Plaintiff requested Appeals Council review; her request was denied on October 11, 2022, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 7-9).  This action followed.

---

[1]    The record includes two different dates as to when Plaintiff filed her application. The ALJ's decision indicates that Plaintiff filed her application on November 10, 2016 (Dkt. 5 at 20, 33), as do Plaintiff's papers (Dkt. 9-1 at 2), and a disability determination explanation document (Dkt. 5 at 116).  However, the ALJ said during Plaintiff's hearing that the application was filed on December 5, 2016 (*id.* at 110), and hearing notices (*id.* at 240, 245) and Plaintiff's application (*id.* at 303) reflect the same date.  Ultimately, the discrepancy about the filing date does not alter the Court's decision on the instant motions.

[2]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id.* § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa*

*v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## **DISCUSSION**

### I.    **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since the application date. (Dkt. 5 at 22).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "an adjustment disorder, borderline personality disorder, pseudo seizures, degenerative disc disease, and obesity." (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 22-23). The ALJ particularly considered the criteria of Listings 12.02, 12.04, 12.06, 12.07, and 12.08 in reaching his conclusion. (*Id.* at 22).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional limitations:

> [Plaintiff] can stand at will with no loss of productivity during the transition. She can perform simple routine one to two step tasks but cannot perform complex work, defined as involving multiple simultaneous goals or objectives or the need to set independent quality or quantity performance standards. She should not work in jobs requiring high speed activities or daily quota production work. She cannot work at unprotected heights or with dangerous machinery, tools, or chemicals. However, she can operate a motor

vehicle.  She should not be exposed to concentrated atmospheric irritants particularly dusts and gases.

(*Id.* at 24).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 32).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of sorter and small products assembler. (*Id.* at 32-33).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 33).

## II.     The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter to the Commissioner for a new hearing, arguing that the ALJ erred at step three because Plaintiff's pseudo-seizures meet Listing 12.07.  (Dkt. 9-1 at 1).  Plaintiff contends that the ALJ's decision was not supported by substantial evidence and does not build a logical bridge from the evidence.  (*Id.* at 19-20).  In response, the Commissioner argues that the ALJ's determination that Plaintiff did not satisfy the requirements of any listing is supported by substantial evidence because the ALJ considered the four broad areas of mental functioning and supported his conclusions by relying on medical opinions and evidence in the record.  (Dkt. 13-1 at 10-17).

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y.

2009), *adopted*, 614 F. Supp. 2d 252 (N.D.N.Y. 2009). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017) (quotation and citation omitted). "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Id.* at 273 (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002) (alteration in original)); *Loescher*, 2017 WL 1433338, at *3 ("[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." (internal quotation marks and citations omitted)). However, "[a]n ALJ's unexplained conclusion [at step three] . . . may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).

Listing 12.07 covers somatic symptom and other related disorders, which are "characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general

medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience."   20 C.F.R. Pt. 404, Subpt. P, App. 1, Part B2, § 112.00(B)(6)(a).   To establish disability under Listing 12.07, the plaintiff must meet or equal the criteria of both paragraphs A and B ("paragraph A" and "paragraph B," respectively).   *See Lori H. v. Kijakazi*, No. 3:20-CV-1303 (DJS), 2022 WL 675702, at *4 (N.D.N.Y. March 7, 2022).

As an initial matter, Plaintiff argues that the ALJ did not properly evaluate the criteria for paragraph A of Listing 12.07 because he misstated the standard by suggesting that Plaintiff was required to demonstrate that all three criteria were present, rather than just one of the three.   (Dkt. 9-1 at 20-21).   Under paragraph A of Listing 12.07, the plaintiff must have medical documentation of one or more of the following: (1) "[s]ymptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;" (2) "[o]ne or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; *or*" (3) "[p]reoccupation with having or acquiring a serious illness without significant symptoms present."   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07 (emphasis added).   In his decision, the ALJ stated, "[t]he medical expert at the hearing also testified that the claimant does not meet or equal a listing and specifically with respect to listing 12.07, does not have all three criteria present, but only one criterion of altered sensory motor function."   (Dkt. 5 at 22; *see also id.* at 30 ("The medical expert testified . . . [that] [s]he does not meet or equal any listings including listing 12.07 as she only has one criterion of altered sensory motor function.")).   The Commissioner acknowledges that the ALJ incorrectly stated the legal

standard, and that by finding that Plaintiff met the criterion for altered sensory motor function, the ALJ should have concluded that Plaintiff satisfied paragraph A of Listing 12.07. (*See* Dkt. 13-1 at 11). But this error was harmless because Plaintiff was also required to meet or equal the criteria of paragraph B of Listing 12.07, and for the reasons set forth below, substantial evidence supports the conclusion that Plaintiff did not make this showing. *Ortiz v. Colwin*, 298 F. Supp. 3d 581, 590 (W.D.N.Y. 2018) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration." (quoting *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010))); *see also Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 579 (S.D.N.Y. 2022) ("the Court need not remand the case if the ALJ only committed harmless error").

Evaluation of the severity of mental impairments for purposes of paragraph B involves the application of a "special technique." The special technique requires the ALJ to evaluate a medically determinable mental impairment over four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 416.920a(c). A claimant must show an "extreme" limitation in at least one of the four areas, or "marked" limitations in at least two of these areas, to meet paragraph B and, accordingly, Listing 12.07. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07.

Here, the ALJ concluded that Plaintiff had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate

limitation in adapting or managing oneself.  (Dkt. 5 at 23).  While Plaintiff contends that she had at least a "marked" limitation in three of the four areas of mental functioning[3] (Dkt. 9-1 at 22, 25, 27), Defendant argues that substantial evidence supported the ALJ's finding that Plaintiff had no more than a moderate limitation in any of the four areas (Dkt. 13-1 at 17).  The Court agrees with the Commissioner.

In concluding that Plaintiff had a mild limitation in the first area of understanding, remembering, or applying information, the ALJ cited a January 2017 report from consultative psychologist, Gregory Fabiano, Ph.D.  (Dkt. 5 at 23).  Dr. Fabiano's examination report indicated that Plaintiff's "[a]ttention and concentration was mildly impaired, due to emotional distress," and that she "made careless mistakes on the serial 3s task."  *(Id.* at 880).  Dr. Fabiano also noted that Plaintiff's "[r]ecent and remote memory skills were intact."  (*Id.*).  Dr. Fabiano opined that "[Plaintiff] appears to have mild limitations in ability to follow and understand simple directions and instructions." (*Id.* at 881).  In connection with his RFC determination, the ALJ gave "[g]ood weight"[4] to Dr.

---

[3]     Plaintiff does not contest the ALJ's finding (Dkt. 5 at 23) that she had a moderate limitation in the third area of mental functioning (concentrating, persisting, or maintaining pace).  Accordingly, the Court does not review the ALJ's decision on this point.

[4]     Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 416.927(c)(2).  Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the

Fabiano's opinion because "it is supported by program knowledge and the fairly normal mental status exam" and "is consistent with the claimant's good abilities . . . [in] daily living." (*Id.* at 26).

Plaintiff faults the ALJ's reliance on Dr. Fabiano's opinion because the consultative examination occurred in 2017, and she contends that her memory worsened after this time. (Dkt. 9-1 at 22). However, more recent evidence in the record provides substantial evidence for the ALJ's conclusion that Plaintiff had only a mild limitation in this area of mental functioning. For instance, Plaintiff's mental status exams throughout 2019 reflected that her attention, memory, concentration, and word recall were intact. (Dkt. 6 at 78, 80-81, 83, 88, 92). Even an evaluation in September 2019 cited by Plaintiff as evidence that her recent and remote memory were only fair, indicates that Plaintiff's ability to concentrate was normal, her immediate memory was good, and she was attentive. (*Id.* at 512).

In addition, the ALJ cited February 2021 testing and evaluation records from clinical neuropsychologist Tatyana Raby, Ph.D., which reflected that Plaintiff's memory for recent events appeared adequate. (*Id.* at 53). The ALJ also cited to Dr. Raby's report for the fact

---

opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.* Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific . . . ." *Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) (internal quotation marks omitted). "Under this rule, consultative and non-examining physicians are afforded lesser weight than a treating physician who is understood to have a more intimate understanding of the claimant's medical background." *Garcia v. Comm'r of Soc. Sec.*, No. 20-CV-10626 (OTW), 2023 WL 2625796, at *5 (S.D.N.Y. Mar. 24, 2023).

that Plaintiff's "subacute onset of forgetfulness over the past several months" was related to taking too much acetaminophen for back pain.  (*Id.* at 52).  While Plaintiff argues that her memory limitation in cognitive testing by Dr. Raby "was enough to call into question the entire examination" (Dkt. 9-1 at 23), the ALJ, in connection with his RFC determination, noted that "specific test scores were unreliable" (Dkt. 5 at 28).  The ALJ gave "[s]ome weight" to Dr. Raby's opinion on grounds that it was based on thorough evaluation and testing, while noting that it was somewhat inconsistent with Plaintiff's other activities.  (*Id.* at 28-29).  While Plaintiff cites to other evidence in the record reflecting that her ability to understand, remember, or apply information demonstrates more than a mild limitation, the fact that there is contradictory evidence in the record relating to a specific impairment does not render the ALJ's determination erroneous.  Rather, in deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," which the ALJ has done here.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

As to the second area of mental functioning, interacting with others, in finding Plaintiff's limitation to be mild, the ALJ noted:

> During her consultative examination, [Plaintiff] was cooperative and her manner of relating was adequate.  She reported that she had friends and her family relationships were okay.  She stated that she socialized but she did not use public transportation.  She was noted to be aggressive toward her

> grandfather in July 2016.  The record shows that [Plaintiff] was generally
> cooperative with providers.

(Dkt. 5 at 23.).  Plaintiff argues that the ALJ's analysis failed to build a logical bridge from the evidence because "it downplays how limited Plaintiff actually was dealing with others." (Dkt. 9-1 at 24).  Plaintiff contends that she regularly had difficulty with medical providers, a work supervisor, and family members.  (*See id.* at 24-25).  However, other evidence in the record supports the ALJ's analysis.   For instance, while Plaintiff was "a bit provocative" at her new patient psychological assessment in 2017, she "appear[ed] more engaging, more reflective, less provocative, and seemingly more genuine" as the session progressed.  (Dkt. 5 at 957).  She participated in the PROS Recovery program from 2017 to 2019, and her treatment records throughout this period reflect that she engaged with her providers.  (*See id.* at 1372, 1375, 1418).  According to a visit note from April 2018, she stated that she was "enjoying the PROS program immensely and tries to attend every day." (*Id.* at 1418).  In addition, in connection with his RFC determination, the ALJ gave "[g]ood weight" (*id.* at 28) to the medical opinion of a state agency medical consultant who opined that Plaintiff had no evidence of limitations in her ability to interact appropriately with others (*id.* at 1469).  The ALJ noted that Plaintiff "felt lonely and cut off from people," but that she also "engaged in her social organizations and interacted with others on Facebook." (*Id.* at 27).  To be sure, there is evidence suggesting that Plaintiff's family relationships were challenging at times, but the ALJ acknowledged these data points and factored them into his assessment.   As noted above, when evidence in the record offers differing conclusions with respect to a plaintiff's impairments, it is the ALJ's function to resolve the conflict.  *See Bryan F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0055-DB, 2021 WL 1737760,

at \*5 (W.D.N.Y. May 3, 2021) ("[I]t is within the ALJ's discretion to resolve genuine conflicts in the evidence.  In so doing, the ALJ may 'choose between properly submitted medical opinions.'" (quotation omitted)).  Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff had a mild limitation in interacting with others.

With regard to the fourth area of mental functioning—adapting or managing oneself—the ALJ found that Plaintiff had a moderate limitation.  (Dkt. 5 at 23).  The ALJ cited to specific evidence in the record supporting his finding, including Plaintiff's own reports of her functioning, the opinion of Dr. Raby, and treatment notes in the medical record.  The ALJ noted that Plaintiff could perform everyday tasks, such as bathing and grooming, cooking, shopping, and managing money.  (*Id.*).  The ALJ also highlighted Plaintiff's comment to Dr. Raby that she felt happy most days and enjoyed reading, crafting, her dog, and movies.  (*Id.*).  According to Plaintiff's treatment records from February 2019, she reported sleeping well and having a good appetite, and she had focus, concentration, energy, and motivation.  (*Id.* at 1002).  Plaintiff argues that her hospitalization from the acetaminophen overdose, frustration with her prescription levels, and monetary theft from her grandfather are evidence of her poor insight and judgment.  (*See* Dkt. 9-1 at 26-27).  But the ALJ's decision reflects that he considered these factors, including that Plaintiff's treatment records for her acetaminophen overdose reflected no suicidal ideation or intent to commit self-harm.  (Dkt. 5 at 29).  The ALJ also noted that Plaintiff was on controlled maintenance therapy for opioid addiction and that she reported misusing Suboxone.  (*Id.* at 27, 29).  To the extent that Plaintiff's argument invites the

Court to re-weigh the evidence, that is not the function of this Court.  *See Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec.*, No. 19-cv-9253 (AT) (BCM), 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021) ("However, the reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation."), *adopted*, No. 19 Civ. 9253 (AT) (BCM), 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021).

In sum, considering the evidence as a whole, the ALJ concluded that Plaintiff had only mild or moderate limitations in the four areas of mental functioning, cited to evidence in the record supporting this conclusion, and explained his reasoning for those conclusions. As a result, the Court cannot say that the ALJ's conclusion is not supported by substantial evidence.  *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (discussing substantial evidence standard, which is a "very deferential standard of review" and means "once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*'" (quotations and citation omitted)).  Accordingly, remand is not required.

## <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  March 1, 2024
         Rochester, New York